# IN THE COURT OF APPEALS OF IOWA

No. 25-1738
Filed December 17, 2025

**IN THE INTEREST OF A.W. and C.W.,**
**Minor Children,**

**N.M., Mother,**
  Appellant.

_____

Appeal from the Iowa District Court for Wapello County, Richelle Mahaffey, Judge.

A mother appeals the termination of her parental rights to her children. **AFFIRMED.**

Larry J. Pettigrew of Pettigrew Law Firm, P.C., Newton, for appellant mother.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

Nicole C. Steddom of Heslinga, Dixon & Hite, Oskaloosa, attorney and guardian ad litem for minor children.

Considered without oral argument by Tabor, C.J., and Badding and Sandy, JJ.

**SANDY, Judge.**

Following the mother's lengthy history of substance use and failed drug tests, the district court terminated her parental rights to two of her children, born in 2020 and 2022. On appeal, the mother challenges the statutory grounds for termination, argues termination is not in the children's best interests, and asserts a permissive exception should be applied. We affirm.

## I. Background Facts & Procedural Posture.

This family first came to the attention of the Iowa Department of Health and Human Services (HHS) in April 2022 when newborn C.W. tested positive for marijuana/THC via an umbilical-cord screening. The resulting child-abuse assessment was founded for the presence of an illegal drug, and voluntary case management began. A.W. had similarly tested positive at birth in 2020. The children remained with their mother; the father was incarcerated at the time. However, the mother continued using marijuana and did not follow through with recommended treatment or mental-health services.

In October 2022, after HHS had difficulty maintaining contact with the family, the mother was arrested on multiple charges including neglect or abandonment of a dependent person, operating while intoxicated, and drug-related offenses. Both children were present. Police reported methamphetamine, marijuana, prescription medications, and paraphernalia in the home. The next day, both parents agreed to a safety plan requiring supervised contact. Multiple safety plans were updated through late 2022, but due to continued parental substance use and service noncompliance, child-in-need-of-assistance (CINA) petitions were filed in December 2022.

Following a February 16, 2023 hearing, both children were adjudicated CINA. The court allowed custody to remain with the mother conditioned on her participation in residential treatment (which she had begun), with an expectation of her transition to outpatient services after discharge. The family returned to Ottumwa in March 2023, living with the maternal grandmother. The mother delayed engaging in outpatient treatment until June and acknowledged resuming marijuana use. Following a review hearing on August 1, the children remained in the mother's custody, notwithstanding her marijuana use. However, in August, the mother's hair test (collected August 9) was positive for methamphetamine and cocaine. Following the positive test, the mother disclosed that she had used methamphetamine and psychedelic mushrooms in July and continued marijuana use.

In November, the State sought and obtained a change of disposition removing the children from the mother and placing them with the father, contingent on residence with the maternal grandmother. The children have remained removed from the mother's care since November 7, 2023. The mother continued illegal substance use and disengaged from services. She was unsuccessfully discharged from outpatient treatment in May 2024. She re-entered residential treatment in June and successfully discharged that August, but she did not engage in recommended intensive outpatient services thereafter and resumed marijuana use, resulting in another unsuccessful discharge in the fall 2024.

In October, the case transferred to a new social worker. After the mother reported concerns about the father's substance use, a safety plan briefly designated the mother as primary caregiver with the father out of the home.

However, the mother left after approximately a week and the father resumed caretaking with supportive services. The mother declined drug testing on three occasions, and HHS later learned she returned home before Christmas without approval. A new plan required professionally supervised contact and departure from the home pending drug tests. Neither parent appeared for January 2025 testing. From January to March, the mother attended only two fully supervised visits and had limited communication with HHS and providers.

On April 17, Ottumwa police responded to a call after C.W. was seen wandering alone. A.W. was also found unattended, and the father was discovered asleep with a bag of marijuana nearby. A search warrant yielded additional illegal substances and paraphernalia. The father was arrested. On April 18, the court placed the children in HHS custody for placement. The children were placed with fictive kin, L.H., where they remained for at least two months.

HHS repeatedly advised the mother to coordinate fully supervised visits through HHS and providers. Despite the requirement of approved supervision, she had unauthorized contact and did not arrange consistent visits. As of early 2025, HHS had no information indicating current participation by the mother in substance-use or mental-health services. She had not submitted to requested drug testing, and her last known therapy session was in January (with a medication-management visit in November 2024). On June 16, 2025, following a traffic stop on the mother, officers found marijuana, THC products, alprazolam, and a used syringe on or about the mother. The mother admitted possession and was arrested for two counts of possession of a controlled substance and possession of drug paraphernalia.

On June 20, the State filed separate termination petitions for the children. Trial on the termination petitions occurred over the course of three days (July 22, August 12, and September 26). The juvenile court entered the termination order on October 2, 2025.

On appeal, the mother challenges the sufficiency of the evidence under Iowa Code section 232.116(1)(e), (f), (h), and (*l*) (2025), principally disputing the removal-duration elements and asserting the children lived with her from April to June 2025, which she characterizes as a qualifying trial home visit. She also contests best interests and seeks application of the permissive exception for the closeness of the parent-child relationship under section 232.116(3)(c).

The State's response emphasizes that the children have not been returned to the mother's custody by court order since November 7, 2023; that the April 2025 removal from the father resulted in HHS custody and fictive-kin placement; and that any periods of contact contrary to safety plans and orders do not negate the court-ordered removals. The mother now appeals.[1]

## II. Standard of Review.

Our review in termination-of-parental-rights cases is de novo. *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022). We follow a three-step process of determining (1) whether the State has established a statutory ground for termination under Iowa Code section 232.116(1); (2) whether the State has established that termination of parental rights is in the children's best interests after applying the framework in section 232.116(2); and (3) whether a permissive exception under

---

[1] The State did not file a petition to terminate the father's parental rights.

section 232.116(3) should be applied. *In re L.A.*, 20 N.W.3d 529, 532 (Iowa Ct. App. 2025) (en banc). We do not address any steps not challenged by a parent. *Id.* After addressing any challenged steps, we then address any additional claims raised by a parent. *Id.*

### III. Analysis.

#### A. Statutory Grounds

On appeal, the mother challenges the sufficiency of the evidence under Iowa Code section 232.116(1)(e), (f), (h), and (*l*), principally disputing the removal-duration elements and asserting the children lived with her from April to June 2025, which she characterizes as a qualifying trial home visit.

The juvenile court terminated the mother's parental rights as to both children under Iowa Code section 232.116(1)(e) and (*l*), under paragraph (f) as to A.W., and under paragraph (h) as to C.W. When the juvenile court terminates on multiple grounds, we can affirm based on any ground supported by the record. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We focus on paragraph (f) as to A.W., and paragraph (h) as to C.W. Section 232.116(1)(f) permits termination of parental rights if the court finds

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a [CINA] pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.

> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.[2]

Paragraph (h) permits termination when all of the following occur:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a [CINA] pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

The mother contests only the third element of each paragraph. For both these grounds, the mother argues

> that the children were in the mother's physical care from April 2025 until June 2025. With reference to this code section, that time could be considered a trial home visit of thirty days or more. Such a trial home visit would make the state's reliance on Iowa Code Section 232.116(1)(f) and (h) fail. The mother believes the time the children lived with her equated to a trial home visit with the children and believes the Court erred when it found Iowa Code Section 232.116(1)(f) and (h) were proven true by clear and convincing evidence.

We reject the mother's argument. The children were removed from the mother's care on November 7, 2023. The children were never returned to her custody by order of the court. By the first day of the termination trial the children had been removed for one year and eight months. The crux of the mother's argument is

---

[2] Section 232.116(1)(f)(4) refers to not being able to return a child to the parent's custody "at the present time," which we interpret to mean at the time of the termination trial. *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010).

that, because she ignored and disobeyed safety plans and court orders,[3] she should be credited with having custody of her children. We disagree.

Because the children have been removed from the mother's physical custody for at least twelve of the preceding eighteen months the juvenile court properly found sufficient evidence supporting termination of the mother's parental rights pursuant to Iowa Code section 232.116(1)(f) and (h).

### B. Best Interests

The mother also contends the juvenile court erred by concluding that terminating her parental rights to her children was in their best interests. When making a best-interests determination, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). The best interests of the children is our primary concern, both long-range and immediate. *In re J.H.*, 952 N.W.2d 157, 171 (Iowa 2020); *A.B.*, 815 N.W.2d at 776–78.

The juvenile court opined:

[A.W.] and [C.W.]'s continued exposure to [the mother]'s behavior is harmful to them. [The mother]'s presence in their life has been inconsistent, which is emotionally detrimental. Her methamphetamine-use disorder has not been adequately treated. Her decisions to maintain a volatile relationship with [the father] have led to domestic violence in the family home.

---

[3] For example, the mother testified at trial that although she knew she was not to be in the father's home, she hid in the basement when HHS or providers would visit. She also testified that after the father's arrest in April 2025 (and the children's removal from his custody), she continued to violate HHS directives and court orders by having the children in her care despite their placement with fictive kin.

We can say it no better than the juvenile court did. In considering the children's safety, the best placement for furthering the long-term nurturing and growth of the children, and their physical, mental, and emotional condition and needs, termination of the mother's parental rights is in the best interests of the children.

### C. Permissive Exception

Next, the mother points to a potential permissive statutory exception to preclude termination. She claims her parental rights should not be terminated because there is clear and convincing evidence that the termination would be detrimental to the children due to the closeness of the parent-child relationship. *See* Iowa Code § 232.116(3)(c).

It is the mother's burden to prove the exception should be applied, and we are not persuaded this is such a case. *See In re A.S.*, 906 N.W.2d 467, 475–76 (Iowa 2018). The mother has shown through her conduct over two years that she cannot be trusted to safely parent the children. Indeed, this case has been ongoing the majority of C.W.'s life. These children need and deserve stability and permanency. We decline to apply this permissive exception to preserve the legal bond between the mother and children.

**AFFIRMED.**